[No. 16214. Department One. May 23, 1921.]

HATTIE PURNS HOPTOWIT, *Respondent*, v. REESE B. BROWN *et al.*, *Appellants*.[1]

FRAUD (6)—RELIANCE ON REPRESENTATIONS—INDUCEMENT TO ACT. In an action for fraud the complaint was sufficient as against demurrer, where it alleged that plaintiff was an Indian woman of very limited education, wholly inexperienced in business affairs, to whom land had been allotted by the United States government, for which a fee patent had subsequently been issued without her knowledge; that, while she was confined in a hospital, the defendant with plaintiff's brother, on whom she relied for advice, falsely represented to her that, as soon as a patent issued, the government would require an immediate payment of $7,000 for a water right, and if this sum were not paid at once the government would sell the land and she would receive nothing therefor; that her brother (whose services had been enlisted by defendant for a cash consideration) confirmed the misrepresentations, and that plaintiff, late at night, while weak and distressed, yielded to the solicitations and signed a deed for the consideration of $7,200, the land being worth at the time the full sum of $20,000.

SAME. Under the rule that plaintiff is entitled to have his complaint, when questioned as to its sufficiency, tested by its allega-

¹Reported in 198 Pac. 370.

tions as a whole, a complaint for fraud must be held sufficient, though no single one of the false representations made by defendant would in itself be sufficient to deceive a person of ordinary prudence, if their combined effect, when considered with the circumstances surrounding plaintiff, might be sufficient to induce a person to act who usually possesses more than ordinary caution.

SAME (4)—MATTERS OF OPINION—EXCEPTION TO RULE. The rule that fraudulent misrepresentations of future events, or of law, are non-actionable, though a person is deceived thereby to his injury, is subject to exceptions, and may not apply where one party is not as well informed as the other.

EVIDENCE (68)—SECONDARY EVIDENCE—FACTS EVIDENCED BY A WRITING. Where a controversy in relation to a written document does not relate to the contents thereof, but the inquiry is confined to the question whether there is a document containing a particular matter, any one having knowledge of the fact may testify thereto.

FRAUD (26)—TRIAL—INSTRUCTIONS. Under the rule, that instructions must be read as a whole, the fact that a paragraph of the instructions might be incomplete when standing alone would not constitute error, where the court in another part of his instructions emphasized, in positive and direct language, the matter alleged to have been omitted.

Appeal from a judgment of the superior court for Yakima county, Holden, J., entered August 2, 1920, upon the verdict of a jury rendered in favor of plaintiff, in an action for damages for misrepresentations in obtaining title to certain real property. Affirmed.

*Preble, McAulay & Meigs,* for appellants.

*Griffin & Griffin,* for respondent.

FULLERTON, J. — On May 5, 1919, the respondent, Hattie Purns Hoptowit, conveyed by warranty deed to the appellant, Reese B. Brown, an eighty-acre tract of land situated on the Yakima Indian Reservation. In this action the respondent recovered in damages against the appellants, based on the ground that she had been induced to sell the land at much less than its actual value by false and fraudulent representations made by the appellant, Reese B. Brown, and confirmed

by her brother, whom the appellant had hired for that purpose. The appeal is from the judgment entered.

The first assignment of error questions the sufficiency of the complaint and it is necessary to notice its allegations. In the complaint it is alleged that the respondent is an Indian woman, of very limited education, wholly inexperienced in business affairs; that shortly before the execution of the deed she had been left a widow; that the land in question had been allotted to her by the government of the United States many years before the execution of the deed, and that a fee patent had been issued to her for the land but shortly before such time, a fact which she did not then know. It is further alleged:

"That on or about the 5th day of May, 1919, the plaintiff was then sick and confined in the St. Elizabeth Hospital in the City of Yakima, Yakima county, Washington, and had shortly theretofore been confined, and was very weak and in ill health both in body and mind. That at about four o'clock in the afternoon of said day the plaintiff's brother, Phillip Purns, upon whom the plaintiff had relied for advice in business transactions, and in whom the plaintiff had and reposed full confidence, came to plaintiff and informed plaintiff that the defendant, Reese B. Brown, desired to purchase from the plaintiff said lands above described, and that he was willing to pay therefor the sum of Fourteen Thousand ($14,000) Dollars. That the plaintiff informed her brother Phillip Purns that she did not desire to sell said lands for $14,000, or at all.

"That thereafter, and on the same night and at about nine o'clock P. M., the plaintiff's brother, Phillip Purns, and the defendant Reese B. Brown returned to the hospital, in which the plaintiff was then confined, and to the plaintiff's room, at which said time and hour the said Reese B. Brown wrongfully, fraudulently, maliciously, and with the intent and purpose of wronging, cheating and defrauding this plaintiff out of said lands,

and for the purpose of procuring a conveyance of said lands, and for the purpose of procuring a conveyance of said lands at much less than their real value, in the presence of plaintiff's brother, Phillip Purns, told the plaintiff that a fee patent to the lands hereinbefore described would soon be issued to the plaintiff. That as soon as said fee patent was issued to the plaintiff the plaintiff would be required to pay immediately to the United States government the sum of Seven Thousand ($7,000) Dollars for a permanent water right for said lands, and that if said sum of $7,000 was not paid immediately for said water right that the lands would be sold by the United States government to pay for said water right and taxes, and that the plaintiff would get very little, if anything at all, out of said lands if said lands were so sold for the water right and taxes.

"That said defendant, Reese B. Brown, further told and represented to plaintiff that he was the only person who would buy said lands except at a government sale, and that if the property was sold by the government the plaintiff would not receive to exceed Four Thousand ($4,000) Dollars therefor, and that such sum as the plaintiff did receive would only be paid to her in small installments extending over a number of years.

"That said defendant, Reese B. Brown, further told plaintiff, for the purposes aforesaid, that if the plaintiff did not sell the lands to him and sign a deed therefor he would buy said lands of the United States government at the government sale, and that he could purchase said lands from the United States government at government sale for $4,000.

"That said defendant, Reese B. Brown, further told the plaintiff, for the purposes aforesaid, that the reason the government was going to issue a fee patent to plaintiff was so they could immediately sell the said lands and retain from the sale thereof $7,000 for the water right, and that if she did not sell and convey her lands to him that this plaintiff would lose all of her rights to said lands and would receive nothing therefor.

"That the said defendant, Reese B. Brown, further told the plaintiff, for the purposes aforesaid, that he was going away that night to South America, and that unless the plaintiff so sold and signed a deed to said lands conveying them to said defendant immediately that the sale could not be made at all and that the plaintiff would lose the said lands.

"That the said defendant, Reese B. Brown, also informed the plaintiff, for the purposes aforesaid, that the plaintiff's brother Phillip Purns, and other Indians, had sold their lands to him at prices ranging from $4,-000 for forty acres to $8,000 for eighty acres, but that said lands so sold by said Indians to said defendant were worth twice as much as the lands of the plaintiff.

"That the said defendant, Reese B. Brown, also told the plaintiff, for the purposes aforesaid, that the reason why the lands upon the Tieton Project and in the Naches Valley were being sold as high as $14,000 to $16,000 was because the permanent water rights upon said lands were all paid, and that no lands similar to the plaintiff's were being sold for more than $7,000 where the water rights were not paid for.

"That in said conversation at said time the said defendant, Reese B. Brown, for the purposes aforesaid, frequently referred to plaintiff's brother, Phillip Purns, to corroborate his said statement, and his said statements were corroborated by the plaintiff's brother, Phillip Purns, at all such times."

In the succeeding paragraph of the complaint, the truth of the representations are negatived by appropriate allegations, and it is further alleged therein:

"That the defendant, Reese B. Brown, wrongfully, fraudulently and maliciously procured the assistance of plaintiff"'s brother, Phillip Purns, to aid him in securing a deed of conveyance of said lands from plaintiff, and to confirm his untrue, false and fraudulent statements, and misrepresentations, by paying to plaintiff's brother the sum of five hundred ($500) dollars, all of which was unknown to the plaintiff at said time, but has since come to the knowledge of the plaintiff."

It is further alleged:

"That the plaintiff's husband had left debts and funeral expenses amounting to approximately $1,300. That plaintiff had no means with which to pay said debts and expenses, and had no means for paying immediately the permanent water right upon said land. That she was very weak in mind and body and very much distressed at said time, and especially by the representations and statements made by the said Reese B. Brown in the presence of, and confirmed by, the plaintiff's brother, Phillip Purns.

"That plaintiff relied upon said statements and representations so made by defendant Reese B. Brown, and confirmed by plaintiff's brother, and believed the same to be true, and at eleven o'clock at night, when the plaintiff had become so fatigued and distressed that she could no longer resist the solicitations and importunities of the said Reese B. Brown, she was induced to sign a deed of conveyance to the said Reese B. Brown, conveying said lands for the consideration of $7,200.

"That said lands at said time were worth the full sum of $20,000, and that plaintiff was wrongfully cheated and defrauded of the sum of $12,800, and that plaintiff would not have signed said deed of conveyance, and would not have acknowledged the same if plaintiff had not believed and relied upon the wrongful statements and representations, hereinbefore set forth made by the said Reese B. Brown."

The appellants argue, in support of this branch of the case, that the alleged false and fraudulent representations are divisible into two branches, misrepresentations of fact and misrepresentations of law; that in so far as they relate to facts they, "predicate only of the future, and that they so plainly predicate merely Brown's opinion of matters, concerning which the sources of information were available to her as to him, and are either so obviously absurd or are so plainly of matters not under Brown's control, that, as mat-

ter of law, an ordinarily prudent person would not rely thereon;'' and, that the representations of matters of law are not actionable under the general rule, that every one is bound and presumed to know the law. But it is a familiar rule that a plaintiff is entitled to have his complaint, when questioned as to its sufficiency, tested by its allegations as a whole. It may be that no single one of the representations made would be in itself sufficient to deceive a person of ordinary prudence, yet their combined effect, when considered with the circumstances, may be sufficient to induce a person to act who usually possesses more than the ordinary caution. In this instance the surroundings are very effectually pictured, and enough is alleged to show that the respondent was never what the law would consider an ordinarily prudent person, and that she did not at the time possess even her usual normality. Clearly, the law will not under these circumstances hold her to a very strict accountability, and will relieve her from her voluntary acts, whereby she has been deceived and defrauded, on much slighter grounds than it would an ordinary person, or even herself had she possessed her usual normality and had not been deceived at the appellants' procurement by the criminal act of one in whom she had theretofore imposed and did then impose trust and confidence,

Nor is it the rule that all fraudulent misrepresentations of future events, or all fraudulent misrepresentations of law where a person is deceived thereby to his injury, are non-actionable. They are generally held so because they are in their nature matters of opinion, of which the one party is presumably as well informed as the other, but the exceptions are as well defined as the rule itself, and circumstances such as are here shown are generally held to constitute an exception. See

*White v. Harrigan*, 78 Okl. 123, 186 Pac. 224, 9 A. L. R. 1041, and the annotations thereto.

What we have said is based on the assumption that the appellants' contentions accurately reflect the allegations of the complaint. It seems to us, however, that the allegations, with respect to matters of fact, relate to past and existing facts as well as facts that will happen in the future, and that the alleged misrepresentations of matters of law relate to questions of mixed law and fact, rather than to mere questions of law. On this theory the complaint should be sustained, even though it could be said that the rule of law we have applied is not pertinent to the specific charges.

The respondent offered no evidence to sustain the allegations of her complaint relating to the Tieton Project, the sales of land to the appellant by the respondent's brother and by other Indians, or the allegation that no lands similar to plaintiff's were being sold for more than $7,000, whereon the water rights were not paid for, and the court expressly withdrew from the jury any consideration of these allegations when making up their verdict. It is argued that, without these allegations, the complaint does not state a cause of action; that proofs of the remaining allegations would in consequence be insufficient to prove a cause of action and because thereof the court erred in denying the appellants' challenge to the sufficiency of the evidence. But we are clear that a cause of action was stated in the complaint aside from the allegations withdrawn, and it would follow that proofs of them would be sufficient to sustain a verdict. On the general challenge to the sufficiency of the evidence to sustain the verdict, the most that can be claimed is that the evidence was conflicting. While the examination of the evidence as a whole has convinced us that the jury

could well have found for the other side, it has also
convinced us that the verdict is not without substantial
evidence in its support, and, since the action was one
at law and triable by jury, this is as far as we are per-
mitted to inquire.

In the course of the trial, over the the objection of
the appellants, the court permitted the respondent's
brother to testify to certain representations made by
the appellant Reese B. Brown which Brown requested
that he repeat to his sister, and to the fact that he did
so repeat them to her. It is objected that this was
error because this is representation by procurement
and there is no such charge in the complaint. "In
other words," to quote from the brief, "under a com-
plaint alleging only representations by defendants'
own mouth, over defendant's objections, the court per-
mitted testimony of representation by procurement."
But the representations, whether made by the appel-
lant personally or by another through his procurement,
are still the appellant's representations, and under a
general allegation that he made them, it is competent
to show that he made them through his agent.

The court permitted the supervisor of irrigation in
the Indian service of the United States to testify that
there was no rule or regulation promulgated by the
United States which required an Indian allottee, on
an allotment of land to him in fee, to pay immediately
the government charges for a water right thereon.
This was in support of the allegation of the complaint
to the effect that the appellant Reese B. Brown had
falsely represented that, upon the issuance of such fee
patent, immediate payment for water rights would be
exacted by the government. It is urged that this was
error, but we see no objection to the testimony. Where
the controversy is over the contents of a written docu-

ment, the document itself is, of course, the best evidence; but where the inquiry is whether there is a document containing a particular matter, any one having knowledge of the fact may testify thereto.

The court gave to the jury, among others, the following instructions:

"I charge you that the plaintiff is not required to prove that all of the representations alleged in her complaint were made, or that all of them were untrue, or that all of those alleged were made knowingly, falsely and maliciously, with the intent to defraud the plaintiff as alleged. It is sufficient if the substance of the allegations alleged in the complaint and not withdrawn from your consideration were made by the defendant Reese B. Brown as alleged, that they referred to material facts and were made as positive statements of fact; that they were in fact untrue and known by the defendant at the time to be untrue; that they were willfully and intentionally made by the defendant to defraud and cheat the plaintiff by procuring a deed to the land described at less than its fair value; that plaintiff did not know they were false, but believed them to be true and relied upon them as true; was by them fraudulently induced to sell the land at less than its true market value and that plaintiff would not have sold the lands if such statements had not been made by defendant.

"If you find from clear and convincing evidence that at the time and place alleged in the plaintiff's complaint the defendant Reese B. Brown made the statements to the plaintiff as alleged in plaintiff's complaint; that such statements were wrongful and untrue, and were then known by said Reese B. Brown to be wrongful and untrue, that they were made by him for the purpose of deceiving and defrauding the plaintiff as alleged and to induce her to deed the land described to him for the use of defendants at less than its value; that said statements were made as positive statements of facts; that the plaintiff did not know said statements were untrue but believed them to be true and relied upon said statements and was induced thereby to deed

the property described to the defendant Reese B. Brown, at less than it was then fairly and reasonably worth in the open market; then your verdict should be in favor of the plaintiff and against the defendant for such sum as you find from a fair preponderance of the evidence the property deeded was reasonably worth over and above the sum paid for it, together with interest on such sum you may so find from the 5th day of May, 1919, to date, at the rate of six per cent per annum.''

It is objected to these instructions, that they take from the jury the question whether the plaintiff exercised that degree of care necessary for her to exercise before she can claim that she was induced to part with her property because of deceit practiced upon her, and that it is therein decided as matter of law that she did exercise such care. Standing alone the instructions may be subject to the objection urged, but it is a familiar principle that instructions must be read as a whole, and elsewhere in its instructions the court in positive and direct language emphasized the very matter here thought to be omitted. The jury therefore could not have been misled, and this is the determining question.

It is also objected that the court erred in refusing to give certain requested instructions, but, without further reference to them, we are clear that no reversible error was committed by their refusal.

The judgment is affirmed.

PARKER, C. J., BRIDGES, MACKINTOSH, and HOLCOMB, JJ., concur.