[No. 25327. Department Two. January 18, 1935.]

THE STATE OF WASHINGTON, *Respondent*, v.
CLYDE JOHNSON *et al.*, *Appellants*,
JOHN F. DAVIES, *Defendant*.[1]

[1]Reported in 40 P. (2d) 159.

402

*Danson, Lowe & Danson* and *Lester P. Edge,* for appellant Johnson.

*Roy A. Redfield* and *Thomas Oakshott,* for appellant McBride.

*C. W. Greenough* and *Louis F. Bunge,* for respondent.

STEINERT, J.—Defendants were convicted upon a charge of violating Rem. Rev. Stat., §§ 3258 and 3259, relating to banks and trust companies. Motions in arrest of judgment and for a new trial having been denied, sentence was pronounced and judgment was entered.

The information charged that, on January 2, 1931, the defendants, being then and there directors of American Bank of Spokane, a corporation, wilfully, unlawfully and feloniously borrowed from the bank the sum of ten thousand dollars, without a resolution

authorizing such loan having been approved by a majority of the directors of the bank and made and entered in the minutes of the corporation at a meeting while defendants were absent therefrom.

Rem. Rev. Stat., § 3259, upon which the charge was particularly based, reads as follows:

"No bank or trust company shall, nor shall any officer or employee thereof on behalf of such corporation, directly or indirectly, loan any sum of money to any director, officer or employee of such corporation, unless a resolution authorizing the same and approved by a majority of the directors, at a meeting at which no director, officer or employee to whom the loan is to be made shall be present, shall be entered in the corporate minutes.

"Every director and officer of any bank or trust company who shall borrow or shall knowingly permit any of its directors, officers or employees to borrow, any of its funds in an excessive amount or in violation of the provisions of this section, shall be personally liable for any loss or damage which the corporation, its shareholders or any person may sustain in consequence thereof, and shall also be guilty of a felony."

On January 2, 1931, and during the times hereinafter mentioned, American Bank of Spokane was a banking corporation. Defendant Johnson was the president and a director of the bank, defendant McBride was vice-president and a director, and defendant Davies was a director, but not an officer, thereof. City Investment Co. was a corporation engaged in conducting a general financial and investment business. Johnson was a stockholder in, and president of, that corporation. McBride and Davies had no financial interest in the investment company, and were not officers thereof.

In the latter part of 1930, McBride was heavily indebted to a bank in Seattle, and was unable to pay the interest on his indebtedness. The officers of the Seattle

bank asked Johnson to endorse McBride's paper evidencing his indebtedness. Johnson declined to do this, but agreed to see that the interest was paid. Johnson then consulted Davies and McBride with reference to the latter's indebtedness to the Seattle bank. At the same time, Johnson and Davies were also quite heavily indebted, but it does not appear that they were being pressed upon their obligations.

After some conferences with each other, defendants entered into an agreement which contemplated a pooling arrangement of certain of their assets. The purpose of the agreement was to perfect some workable plan by which the interest on the respective obligations of all three could be paid, particularly those of McBride, and thus obviate any embarrassment to the bank because of McBride's relation to it as an officer and director. Under the plan adopted, the salary and dividend incomes of the three men were to be paid into a common fund to be handled and managed by the City Investment Co. From this common fund, withdrawals were to be made for their expenses and interest obligations. Drawings on personal accounts were limited to specified sums, to-wit: One thousand dollars to Johnson, one thousand dollars to Davies, and three hundred dollars to McBride, per month.

Either because the common fund had become depleted or else because it never had sufficient funds to start with, it became necessary to borrow a considerable sum of money in order to make the proposed plan workable. At this point occurred the transaction which formed the basis of the subsequent prosecution.

On January 2, 1931, McBride, at Johnson's direction, prepared a demand note for ten thousand dollars, payable to the order of The American Bank. The note was signed "City Investment Co. Special Acct. by Clyde Johnson, President." McBride took the

note, together with a deposit slip, and had one of the tellers of the bank enter the deposit to the credit of "City Investment Co. Special." The bank, on the same day, made a charge in a like amount upon its loans and discount journal against City Investment Co. Special. However, there was no charge of the amount by the bank against the *general* account of City Investment Co., nor was there any charge made upon the books of City Investment Co. against the individuals here involved, until about nine months later. In May, 1931, the account designated City Investment Co. Special was changed to Investors' Syndicate, because of the confusion that the former designation had brought about.

McBride kept a book showing a record of the receipts and disbursements of the common fund formerly known as City Investment Co. Special, and latterly as Investors' Syndicate, used for the benefit of the three individuals. The first entry in that record is dated January 2, 1931, and reads "American Bank Loan $10,000." Of this special fund, there was withdrawn, over an extended period, by Johnson $3,823.57, by Davies $1,832.32, and by McBride $4,175.14, or a total of $9,842.03. There was no resolution specifically authorizing the above loan by the bank.

From the judgment of conviction, Johnson and McBride alone have appealed. They will, therefore, be hereinafter referred to as appellants. Davies will be referred to as defendant.

The assignments of error may be grouped under the following heads: (1) Error in denying the challenge to the sufficiency of the state's evidence and denying the motions for directed verdict, in arrest of judgment, and for a new trial, respectively; (2) error in the admission and in the exclusion of evidence; and (3)

error in the refusal to give certain requested instructions.

The main question in the case is that presented by the first group of assignments. The offense charged is the unlawful *borrowing* of money from a bank by a director. The immediate and crucial question here is: Who borrowed the ten thousand dollars? Did City Investment Co. borrow it, as the appellants contend, or did the appellants and the defendant themselves borrow it, as the state contends? It may be conceded that, if the City Investment Co., in law and in fact, borrowed the money, then the individuals would not be guilty of the offense charged. The appellants' contention is that there were, in reality, two transactions; one, a loan from the bank to City Investment Co., and the other, from the latter to the three individuals. The state contends that the transaction, as a whole, constituted a borrowing from the bank by the individuals, and that City Investment Co. was simply used as a conduit of the funds from the coffers of the bank to the pockets of the individuals.

The object of the statute is not simply to compel obedience to formal requirements, nor is it satisfied with any such compliance. Its purpose is to protect the bank and its depositors against the possible ravages of internal assaults upon its funds. By its very terms, it forbids any loan to be made to any of the directors, officers or employees of the bank, *directly or indirectly,* without a proper resolution authorizing the same having been made; and by a correlative provision, it forbids any officer or director to borrow or knowingly to permit a similar official to borrow any of the bank's funds without such resolution. The statute is, therefore, leveled at indirection as well as at direction. If the forbidden act may not be effected

immediately, it may not be permitted to be accomplished circuitously.

It is true that the note evidencing the loan was not on its face the obligation of the appellants or defendant, but that of City Investment Co. Special. Consequently, it is strenuously argued by appellants that there was no intention on the part of the individuals to make a contract or create an obligation running from themselves to the bank; that there was no meeting of minds between the bank and the individuals; and that the note manifests that such was not the intention or the result. But these considerations are not of controlling importance here. We are not now concerned with any possible right of action that the bank may have had against City Investment Co. upon the note. We are concerned only with what the appellants and defendant did with respect to the bank's funds. Manifestly, it was their intention to get the ten thousand dollars; and they did get it by means of a note prepared by appellants, running from City Investment Co. Special to the bank. It is admitted that the money was to be used for their personal benefit, and that, in fact, it was so used.

In *First Bank of Cordova v. Tjosevig,* 138 Wash. 231, 244 Pac. 736, we said:

"A loan is made when the borrower receives money over which he exercises dominion, and which he expressly or *impliedly* promises to return." (Italics ours.)

Acting jointly, the appellants and the defendant received the money and exercised dominion over it, and if they obtained it from the bank unlawfully, the law created an implied obligation to repay it. Since we are not dealing with the mere civil aspect of the case, we are not limited to the express provisions of an instrument which, on its face, evidenced a con-

tractual relationship between the parties named therein. We are dealing with a criminal statute which forbids a course of action, whether direct or indirect, and regardless of whether it appears to be one thing or another.

The appellants were on both the disbursing end and the receiving end of the line. As officers of the bank, they knew whence the money was coming and whither it was going. The sequence is not necessarily broken merely because of the passing of the money through the hands or account of another party, whether corporate or individual. The statute forbids the unlawful borrowing, whether it be consummated directly or by subterfuge. In fact, if it be done by subterfuge, it is the more reprehensible. Direction may employ but a single hand, while subterfuge may employ any one of many, and is essentially less subject to detection.

In analyzing the evidence, we are, of course, not to be understood as holding that in no instance may a director of a bank borrow money from a third party, who in turn borrows a like, or other, amount from a bank of which the first borrower is a director. The two transactions may, in fact and in law, be entirely separate transactions, wholly distinct from each other. We simply hold here that the evidence presented a case for the jury to determine. Under the evidence, it was for the jury to say whether City Investment Co. borrowed the money and, in turn, loaned it to appellants, or whether appellants, acting under the guise of City Investment Co. Special, were indirectly but actually borrowing the money. The verdict of the jury indicates its conclusion upon that issue. The evidence was sufficient in weight to support the verdict, and the effect of the evidence to the contrary would depend in large part upon its credibility. That

question, likewise, the jury resolved against the appellants.

The second group of assignments of error relates to the exclusion and to the admission of certain evidence.

█ The principal contention made by appellants under this head is that the court erred in refusing to admit evidence of the administrative construction of Rem. Rev. Stat., § 3259. Appellants offered to prove that, by the minutes of the directors adopted February 11, 1930, a line of credit, sufficient to include the instant loan, had been extended to appellants. They further offered to prove by a number of witnesses, who had from time to time been supervisors of banking, directors of efficiency and bank examiners of the state of Washington, that they, as such officers, had construed that section to mean that a resolution in the form of that above referred to, extending a line of credit to a director, and adopted at a meeting at which the director was not present, was a proper compliance with the statute.

That question was fully considered and discussed in *State v. Davies,* 176 Wash. 100, 28 P. (2d) 322, and it was there held that the statute prohibited any loan to an officer of the bank unless the *particular* loan was passed upon by the board of directors, and that a mere blanket authorization of a line of credit made at the beginning of the year was not a compliance with the statutory requirements. Appellants ask us to reconsider this pronouncement, or, at least, to define its application for the guidance of bank officials in the future. We are satisfied with the rule as it has been pronounced, and we know no reason why, in this case, we should suggest the extent of its application in other cases.

█ The court admitted in evidence, over appel-

lants' objection, a series of exhibits constituting a statement of the assets and liabilities of Messrs. Johnson, Davies and McBride. These exhibits were found in the safe-deposit box of appellant Johnson. One of the exhibits was in Johnson's handwriting. The others were in the handwriting of McBride. It was part of the state's case to show that the appellants and Davies received the money. The exhibits supplied that evidence. They were, therefore, properly admitted.

Upon cross-examination, Johnson was asked and required to answer concerning his indebtedness to American Bank. This is assigned as error, on the ground that, since motive or intent was not of the essence of the offense, therefore other offenses or transactions of a similar kind could not be shown. *State v. Larson*, 119 Wash. 123, 204 Pac. 1041. But this cross-examination was not for that purpose. Johnson, on his direct examination, had testified as to his financial worth, and also concerning a check for $7,559.60, which he had given the bank on January 2, 1931, to apply on his indebtedness. The cross-examination was proper upon a subject that appellant Johnson had opened.

A witness for the state was permitted to testify that he had checked the minutes of American Bank for the month of January, 1931, and that there was no *legal* resolution authorizing the loan to the appellants or to Davies. This was objected to, on the ground that it was not the best evidence, and that it called for a conclusion and the legal opinion of one not qualified. In view of the issues here involved and the state of the record, we deem the assignment of error without merit. The only possible authorization for the loan is the one made on February 11, 1930, above referred to. It was upon that authorization that appellants relied;

they claimed none other. But, as we held in *State v. Davies, supra,* an authorization for a line of credit given at the beginning of the year is not a sufficient compliance with the statute. The minute book was marked for identification and is before us. As a matter of precaution only, we have examined it, and find that it contains no resolution authorizing the particular loan.

█ A witness was asked upon cross-examination by appellants (1) whether City Investment Co. was conducting a business of its own; (2) whether the note here in controversy had been paid by a renewal note of City Investment Co.; and (3) whether the records of the bank showed that the ten-thousand-dollar note had ever been paid. The court sustained objections to all three questions. The rulings are assigned as error. The reason given by counsel, at the time, for the first question was that it would show that City Investment Co. was a corporation. But that fact had already been shown by the introduction of the company's articles of incorporation. The second and third questions were objected to on the ground that they constituted improper cross-examination. We agree with the ruling of the trial court that, if answers to these questions were material at all, they were material only as a part of the defense. Whether or not they would have been admissible as a defense, we need not here decide.

█ Johnson was asked upon direct examination whether he personally could have borrowed ten thousand dollars from the bank at the time in question. The court sustained an objection to the question, on the ground that it was immaterial, called for an opinion only, and was an assumption. We think that the court's ruling was correct upon all grounds.

█ The third group of assignments has reference

to the court's refusal to give three requested instructions. The first of these instructions was based upon Rem. Rev. Stat., § 3409 [P. C. § 4089], which provides that no person whose signature does not appear on a negotiable instrument shall be held liable thereon, unless he signs under a trade or assumed name. The requested instruction further recited that the burden rested upon the party asserting the validity of the paper to show that a signature by an assumed name was used by the parties sought to be charged, with intent to bind themselves.

What we have already said in discussing the first group of assignments is sufficient to dispose of this phase of the case. This is not a civil case, and the guilt of the parties is not to be determined by the question whether their names appeared upon the note. They were charged with an illegal borrowing, and the note was material only to show the method by which the purpose was effected. The burden resting upon the state was not to show that the parties intended to bind themselves to the obligation of the note, but to show that the money was, in fact, borrowed by them from the bank. The court instructed the jury that the state was required to prove that fact beyond a reasonable doubt.

The second request was for an instruction limiting the jury to a consideration of the particular offense charged in the information. While the court did not use the specific language requested, it fully covered the matter in two of the instructions given by it.

The third requested instruction contained a legal definition of a corporation, and of its liability upon contract as distinguished from the liability of its officers and stockholders. What we have already said with reference to the first requested instruction applies to this, and we need not add anything thereto. There

was no error in refusing to give the requested instruction.

The judgment is affirmed.

BEALS, HOLCOMB, and BLAKE, JJ., concur.