[No. 25427. Department Two. September 3, 1935.]

HOWARD H. HANSEN, *as Supervisor of Banking, Respondent*, v. AMERICAN BONDING COMPANY OF BALTIMORE, *Appellant*.[1]

*Williams & Williams*, for appellant.

*Dillard & Powell, Robertson & Smith*, and *Hart Snyder*, for respondent.

HOLCOMB, J.—This action was brought by the present state supervisor of banking to recover on two bonds issued by appellant for losses alleged to have been guaranteed by the bonds of the now insolvent American Bank of Spokane.

[1]Reported in 48 P. (2d) 653.

The first cause of action is upon what is named Bankers' Blanket Bond, which is not a statutory bond and is in the sum of fifty thousand dollars; while the second cause of action is upon a statutory bond under which certain officers and employees of the bank are covered in the sum of $650 each. Judgment was entered on each cause of action in favor of respondent in the full sum of fifty thousand dollars on the blanket bond and $1300 on the statutory bond on account of alleged misconduct of Clyde Johnson, president, and E. B. McBride, vice-president. On these amounts, offsets were allowed by reason of certain dividends or payments properly applicable thereto.

The discussion in the brief of appellant is largely directed to the blanket bond. The theory on which liability was imposed under that bond was that Clyde Johnson, the president of the American Bank of Spokane, had been guilty of dishonest acts within the terms of the bond, through which the bank suffered a direct loss in a sum greatly exceeding the penalty of the bond.

The blanket bond, which bears date February 15, 1930, contains the following material portions upon which appellant relies:

"Section 1. American Bonding Company of Baltimore, . . . agrees to indemnify THE AMERICAN BANK OF SPOKANE, . . . against the direct loss, sustained while this bond is in force and discovered as hereinafter provided, of any money or securities, . . . in which the insured has a pecuniary interest . . .

"(A) Through any dishonest act, wherever committed, of any of the employees, as defined in section 6 hereof, whether acting alone or in collusion with others.

. . . . . . . . . . . . . . . . .

"Section 6. The word 'Employees' as used herein shall be deemed to mean the officers, clerks, and other persons in the immediate employ of the insured during the currency of this bond, . . .

"Section 7. This bond does not cover—

. . . . . . . . . . . . . . . . . .

"(d) Any loss resulting directly or indirectly from the act or acts of any director of the insured, other than one employed as a salaried official, or of any partner of the insured.

. . . . . . . . . . . . . . . . .

"Section 15. This bond shall terminate as to any employee: . . . (b) immediately upon discovery by the insured of a default hereunder on the part of such employee.

"Section 16. This bond is subject to the following express conditions: At the earliest practicable moment, and at all events not later than ten days, after the insured shall discover any loss hereunder, the insured shall give the underwriter notice thereof by registered letter or telegram, addressed to it at its home office, and shall also, within three months after such discovery, furnish to the underwriter at its home office affirmative proof of loss with full particulars. Legal proceedings for recovery of loss hereunder shall not be brought prior to the expiration of three months from the furnishing of such proof, nor after the expiration of twelve months from the discovery of such loss. . . .

"Section 17. This bond is not intended as statutory bond, but as excess coverage over and above statutory bonds already furnished in accordance with the requirements of the banking department of the state of Washington."

On April 15, 1932, the bank went into voluntary liquidation and was turned over to the state bank supervisor as liquidator.

The case was tried to the court without a jury, who after the conclusion of the hearing, took the matter under advisement and later filed a comprehensive and

very accurate memorandum opinion stating the issues of fact and law which will be largely drawn upon, with due credit to the trial judge. The trial court later made thirty-eight findings of fact, minutely covering all the facts at issue, and rejected thirty-one special findings tendered by appellant. These findings are too lengthy to set forth in the proper limits of an opinion herein.

The arguments by appellant are very discursive and elaborate. Fifty-six errors are claimed as reasons for the reversal of the judgment herein. The principal argument upon behalf of appellant is based upon what it asserts is the fact that neither the blanket bond nor the statutory bond purports to insure the bank against its own acts, losses due to business methods adopted, losses on account of bad loans or other bad investments; but, so far as the blanket bond is concerned, it involves only direct losses due to dishonest acts of certain officers.

One premise relied upon by appellant is that the law presumes that every man acts honestly until the contrary is shown, citing cases from this and other courts. This is a truism which will be accepted.

The losses to the American Bank, for which respondent seeks recovery, arose out of certain loans made by Clyde Johnson, as president, and others in collusion with him. When the supervisor took over the bank, on April 16, 1932, its books did not disclose any loan made to Clyde Johnson by name. Auditing, examination and inquiry disclosed, however, unpaid and uncollectible loans, in a sum exceeding four hundred thousand dollars, had been made and carried under titles or names which did not disclose the identity of any interested parties. The evidence is competent and strong and convincing to support the findings of the trial judge on nearly all of the material

issues; all, in fact, which we consider necessary to support his findings and judgment.

Among other very material findings, the trial court found that, shortly after taking charge of the bank, on or about June 1, 1932, at the earliest possible moment and within ten days after discovery thereof, the then state supervisor of banking, in charge of the liquidation of this bank, notified appellant of certain losses of moneys or securities, or both, sustained by the American Bank during the currency of the bond and while it was in force.

Among other findings made by the court and well sustained by the evidence, is that the net direct loss sustained by the American Bank while the bonds remained in force was first, one involving a concern organized by Johnson and Davies, a director of the bank, to take over certain assets called the Hayes & Hayes assets and usually designated "Aberdeen Assets," and which had no other assets. The balance of the loss to the bank, after realization of certain credited amounts, aggregated $193,181.17.

A second net direct loss to the American Bank through the management and collusion of Johnson and other officers, involved certain transactions through a concern called Reserved Securities Company, of which Davies was the principal owner; and it was, in fact, the *alter ego* of Davies. *State v. Davies,* 176 Wash. 100, 28 P. (2d) 322. During the time the bonds were in force, Johnson, as president of the American Bank, made a purported loan to Davies under the name and guise of Reserved Securities Company in the sum of one hundred thousand dollars, on which nothing had been paid except $257.53, leaving a net direct loss to the bank of $99,742.47.

Another direct loss to the American Bank brought about by Johnson, involved a loan made to the City

Investment Company, a subsidiary wholly owned by the American Bank, of one hundred thousand dollars, which the City Investment Company turned over to Johnson, with which he paid certain indebtedness due the bank. The indebtedness of Johnson to the bank was then taken off of the books of the bank, and in its place the bank acquired fifty thousand dollars from the City Investment Company and its promissory note for fifty thousand dollars. On that transaction, the liquidator recovered $1,975.48, leaving a net loss sustained by the bank in the sum of $98,024.52.

The fourth item found by the trial court to have caused a net direct loss to the American Bank, by Johnson acting in collusion with McBride, another officer and director of the bank, was a loan of ten thousand dollars made to Johnson, McBride and Davies, which was evidenced by a promissory note dated January 2, 1931, signed City Investment Company Special Account, by Clyde Johnson, president, and payable to the American Bank. The whole amount of that loan was used by Johnson, McBride, and Davies, and no part of it was ever paid back.

All of those transactions were unlawful loans under Rem. Rev. Stat., §§ 3258 and 3259 [P. C. §§ 301, 302]. There is no record, and no officer testified, or could honestly testify, that any of those loans were legally made by resolution authorizing each loan, as required by Rem. Rev. Stat., § 3259 [P. C. § 302]. That statute clearly provides for the exercise of discretion by a majority of the board of directors with reference to a particular loan. A mere blanket authorization for a line of credit made at the beginning of the year is not a compliance with the statute. *State v. Davies, supra; State v. Johnson,* 180 Wash. 401, 40 P. (2d) 159. See, also, *Fidelity & Deposit Co. of*

*Maryland v. Opportunity State Bank,* 174 Wash. 245, 24 P. (2d) 399.

Three of the items above mentioned greatly exceed the limit of recovery on these bonds. It will be noted by reference to the case of *State v. Johnson, supra,* that Johnson has been found guilty by a jury, and his conviction sustained by this court, of a violation of the state banking laws.

■ Appellant argues that, even though Johnson was guilty of criminal acts under the banking law, the acts when committed were innocent of criminal intent and were therefore not dishonest as specified in the bond. We are unable to understand how one who has been convicted of violation of the state banking law, which is also the violation of a public, as well as a private, trust, can be said to be innocent of any dishonest motive or intent.

The trial court found, and we agree with the findings, that the making of each of the loans above mentioned constituted a dishonest act, in that each such loan was made dishonestly and without the authorization or knowledge of the board of directors and was disguised and concealed from the board of directors. The fact that they were disguised and concealed from the board of directors is manifest from the evidence, and it would be absurd to say that, when a man is guilty of a criminal act in violation of his legal official duties and trust as an officer of a banking corporation, he is not also guilty of a dishonest act.

The question of honesty or dishonesty is a question of fact. Practically all of the authorities, including those cited by appellant, declare that the question of honesty or dishonesty is a question of fact to be determined by the trier of the facts.

Many cases have been read upon this question, but the consensus of the opinions of the courts everywhere

is that the words "dishonest act" or "dishonesty" should be given a broad and comprehensive meaning.

One case, very similar in its facts to the present case, is *National Surety Co. v. State,* 90 Ind. App. 205, 161 N. E. 573; where the president of a bank committed very much the same kind of acts by subterfuge and through fictitious concerns as were committed by Johnson in this case. Those acts were, in effect, defined as dishonest acts by that court. To the same effect are: *Massillon Mortgage Co. v. Independent Indemnity Co.,* 37 Ohio App. 148, 174 N. E. 167; *World Exchange Bank v. Commercial Casualty Ins. Co.,* 255 N. Y. 1, 173 N. E. 902; *Aetna Casualty & Surety Co. v. Austin,* 285 S. W. (Tex.) 951; *German Savings Bank of Des Moines v. Des Moines National Bank,* 122 Iowa 737, 98 N. W. 606; *Andrew v. Hartford Accident & Indemnity Co.,* 207 Iowa 652, 223 N. W. 529.

██ Appellant further contends there was no compliance with the paragraph of the blanket bond relating to notice, the statutory bond not requiring any notice, of the alleged loss. It must be obvious that notice could not be given by the liquidator until there was discovery of the dishonesty. All the transactions complained of on which enforcement of the penalty of the bond is demanded were made under fictitious names and by secret subterfuges. See 25 C. J. 1102. *Andrews v. Minter Coal & Coke Co.,* 90 Ind. App. 320, 168 N. E. 869; *Fidelity & Deposit Co. of Maryland v. Cunningham,* 181 Ark. 954, 28 S. W. (2d) 715.

Neither is there any evidence that actual notice was acquired by the board of directors or any authorities representing the bank until the liquidator took charge, when inquiry and audit on his part revealed the secret transactions. There could be no ratification on the part of the officers of the bank of such dishonest acts.

Complaint is also made that the liquidator did not

give due notice under the provisions of the blanket bond immediately, or as soon as should have been done. We think the finding of the trial court was correct that, at the earliest possible moment and within ten days after discovery thereof, the then supervisor of banking notified appellant of these losses.

We consider the findings, conclusions and judgment of the trial court in all things correct. They are therefore affirmed.

STEINERT, BLAKE, and MITCHELL, JJ., concur.