[No. 21464.    Department Two.    December 13, 1928.]

H. E. BRIGGS & COMPANY, *Plaintiff,* v. HARPER CLAY PRODUCTS COMPANY, *Defendant.*

WILLIAM E. GRANT, *Appellant,* v. THOMAS S. LIPPY, *Respondent.*[1]

*McClure & McClure,* for appellant.

*Wright, Froude, Allen & Hilen* and *Palmer, Askren & Brethorst,* for respondent.

[1]Reported in 272 Pac. 962.

PARKER, J.—On October 31, 1927, in the case of H. E. Briggs & Co., plaintiff, v. Harper Clay Products Co., defendant, receivers were appointed for the defendant by the superior court for King county, looking to the liquidation of its affairs because of its insolvency. William E. Grant filed in the receivership proceedings his claim against Harper Clay Products Co., claiming it to be indebted to him in the sum of $9,343. This claim was allowed by the receivers as a valid indebtedness against the assets of the receivership.

Thomas S. Lippy filed in the receivership proceedings his claim against the Harper Clay Products Co., claiming it to be indebted to him in the sum of $44,908. The receivers, being doubtful as to the validity and justice of Lippy's claim, in their report to the court thereon asked to be directed what action they should take as to its allowance. Grant filed objections to the allowance of Lippy's claim. The question of the allowance of Lippy's claim being thus presented, it came on for hearing before the court in the receivership proceedings. Both claimants appeared in person and by counsel. The receiver appeared in person and by counsel, but apparently only insisting that Lippy make strict proof of the justness of his claim, the controversy being principally between Grant and Lippy.

The trial proceeded, resulting in the court making findings of fact and entering a formal order allowing Lippy's claim against the assets of the receivership in the sum of $35,583.75, of the same rank as Grant's allowed claim. From this order Grant has appealed to this court. The receivers have not appealed, though they have appeared in this court requesting that no costs be awarded to either of the contesting claimants against the assets of the receivership.

Harper Clay Products Co. was duly incorporated under the laws of this state in August, 1918, with an

authorized capital stock of $50,000 divided into 500 shares of $100 each. Thomas S. Lippy then became the owner of 498 shares of the stock, Leander T. Turner then became the owner of one share of the stock, and George S. Stillson then became the owner of one share of the stock. All of these shares were then fully paid for to the corporation. These gentlemen then became the three trustees of the corporation and have so remained ever since; except that in October, 1924, M. F. Joerndt became the owner of one share of the stock and became a trustee of the corporation, succeeding George S. Stillson, and has so remained ever since.

Lippy has, at all times since the organization of the corporation, remained the owner of 498 shares of its stock, and been its president and the general manager of its business and affairs until the appointment of the receivers.

Prior to October, 1924, Lippy had advanced from his personal funds to the corporation, to aid in financing its affairs, sums aggregating $29,500. These advances were by the trustees formally ratified as debts owing by the corporation to Lippy, and were then and thereafter evidenced by promissory notes of the corporation, one for $17,800 and two for $6,000 each. These notes remain wholly unpaid. Since then, and in addition to these advances, Lippy has advanced to the corporation of his personal funds, from time to time, and received credit therefor in an open account upon the books of the corporation, varying sums of which there remain owing to him $5,783.75. The total of all these advances constitutes the extent of the allowance by the court of Lippy's claim.

The evidence brought here seems to us to clearly preponderate in support of the trial judge's view that the advances made by Lippy to the corporation, in the

238

$35,583.75 aggregate of these promissory notes and the balance due upon the open account, were actually so made by him and remain unpaid. We think that the corporation thereby became, and has remained, justly indebted to him in the aggregate of those amounts, unless we are to hold otherwise upon considerations now to be noticed.

It is contended in behalf of appellant, Grant, that the corporation was a mere sham and cloak under which Lippy was carrying on what the court should regard and now hold as nothing more than his private business, and thus deprive him of any right to participate as a creditor in the assets of the receivership. It is argued that this is evidenced by the fact that Lippy at all times owned 498 of the 500 shares of the stock; that he was at all times the "general executive head of the corporation," with "full authority to direct and manage all of the corporate business," as the by-laws so provided; that he did so manage its business and affairs; and that very few formal meetings of either the stockholders or the trustees were held.

It is true that Lippy was continuously the owner of 498 shares of the capital stock, but the evidence does not negative the good faith ownership of the other two shares in the other two trustees. It is also true that Lippy was general manager of the corporation's affairs, and that few formal meetings of the stockholders or trustees were held and record thereof made; but the evidence indicates that the trustees affirmatively sanctioned the acts of Lippy, as manager, in so far as such sanction was legally necessary, apart from the by-law provisions above quoted.

The evidence does not indicate that the corporation at any time engaged or participated in any business in which Lippy was privately interested, other than receiving the advances from him and thus becoming his

debtor as above noticed. Nor does the evidence indicate that there was any business participated in by the corporation beyond its powers stated in its articles of incorporation. Nor does the evidence indicate that these advances made by Lippy were attended by any motive on his part other than that of good faith, look-ing to the promotion of the interests of the corpora-

While we have held in harmony with the weight ̂rity that:

᠎ one corporation so dominates and controls ᠎s to make that other a simple instrumentality ᠎djunct to it, the courts will look beyond the legal fiction of distinct corporate existence, as the interests of justice require; . . ." *(Platt v. Bradner Co.,* 131 Wash. 573, 230 Pac. 633);

which we conceive to be also the law with reference to a private person so dominating and controlling a corporation, the law is, according to the great weight of authority, that there must be such a commingling of the affairs of the dominant corporation or person as to work a fraud upon the rights of third persons, before a court will be justified in piercing the veil of corporate entity and hold the two corporations, or the private person and the corporation, as one legal entity.

We reviewed this subject at some length in *First National Bank v. Walton,* 146 Wash. 367, 262 Pac. 984, where there was drawn in question the alleged domination of one corporation by another to the extent of making them, in legal effect, one, so far as their creditors were concerned. We there said:

"It is not enough to call for adjudicating two corporations to be in legal effect one, that it merely appear that one is the owner of practically all of the stock of the other, and that they are very intimately related in jointly carrying on their business for the purpose of mutual benefit. It must also appear that

their property rights are so commingled and their affairs so intimately related in management as to render it apparent that they are, in fact and in intent, one, and, so related, to have them regarded otherwise would work a fraud upon third persons;''

citing and quoting from *Erkenbrecher v. Grant,* 187 Cal. 7, 200 Pac. 641, and *Berkey v. Third Avenue R. Co.,* 244 N. Y. 84, 155 N. E. 58.

Some contention is made in behalf of Grant, rested upon the theory of the insolvency of the corporation having existed for a long time prior to the appointment of the receivers, and of Lippy's knowing of such insolvency and continuing the business thereafter to the prejudice of Grant as a creditor of the business. It is true that, during the period of three months immediately preceding the appointment of the receivers, Grant rendered towing services to the corporation of the value of approximately $1,000; but it is also true that during that period he also received from the corporation payments aggregating approximately $1,000. So it would seem that he was not prejudiced by being induced by Lippy to render the towing services during that period of alleged insolvency.

The evidence of just when the corporation actually became insolvent is not satisfactory; but we think the evidence does not warrant the holding that Lippy was at fault, to the prejudice of Grant as a creditor, in continuing the business as long as he did.

Some contention is made rested upon the theory that the contracts of indebtedness arising out of the advances, Lippy being president and general manager of the corporation, were illegal because of his relationship to the corporation. By reason of Lippy's relationship to the corporation, it is true that the court was called upon to closely scrutinize the good faith of the transactions giving rise to the advances; but that does not argue that such indebtedness contracts were

necessarily illegal by the mere fact of Lippy's being the principal officer of the corporation. *Westland v. Post Land Co.*, 115 Wash. 329, 197 Pac. 44; *Dooley & Co. v. Seattle Elec. Supply Co.*, 140 Wash. 227, 248 Pac. 373.

We are of the opinion that the order of the superior court allowing Lippy's claim as a general charge against the assets of the receivership, of the same rank as Grant's allowed claim, should be affirmed. It is so ordered. Lippy shall be awarded his costs incurred in this court against Grant. No costs incurred in this court shall be awarded against or in favor of the receivers.

FULLERTON, C. J., MAIN, and MITCHELL, JJ., concur.