[No. 24770.   Department One.   January 5, 1934.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN F. DAVIES, *Appellant.*[1]

[1]Reported in 28 P. (2d) 322.

*Alex M. Winston* and *E. J. Cannon,* for appellant.

*Charles W. Greenough* and *Louis F. Bunge,* for respondent.

MILLARD, J.—The defendant was charged, as follows, by information of two counts, with an unauthorized borrowing and an excessive borrowing from a bank· of which he was a director:

"That the said defendant, . . . on or about the· 30th day of September, 1931, . . . then and there being a director of the American Bank of Spokane, . . . did then and there wilfully, unlawfully and feloniously borrow directly and indirectly from the said American Bank of Spokane, both for himself individually and for the Reserved Securities Company, a corporation owned in its entirety by the said John F. Davies and used as a mere agent of the said John F. Davies, the sum of Two Hundred Thousand ($200,000) Dollars without a resolution authorizing said loan and approved by a majority of the directors of said bank made and entered in the minutes of said corporation at a meeting when said defendant was absent. . . .

"As a part of the same transaction referred to in Count I, . . . the said defendant, . . . on or about the 30th day of September, 1931, . . . then and there being a director of the American Bank of Spokane, . . . did then and there wilfully, unlawfully and feloniously borrow directly and indirectly from the said American Bank of Spokane, both for himself individually and for the Reserved Securities Company, a corporation owned in its entirety by the said John F. Davies and used as a mere agent of the

said John F. Davies, the sum of Two Hundred Thousand ($200,000) Dollars, said loan then and there being in excess of twenty per cent (20%) of the capital and surplus of said bank actually paid in and unimpaired.''

The trial resulted in a verdict of guilty on both counts. The defendant has appealed from the judgment and sentence pronounced upon him.

The first question presented by the appeal is whether the evidence was sufficient to warrant a conviction. The information is based upon the statute which provides that:

''The total liability to any bank or trust company of any person for money borrowed, including in the liabilities of a firm or association the liabilities of the several members thereof shall not at any time exceed twenty per cent of the capital stock and surplus of such bank or trust company, actually paid in and unimpaired; but the discount of bills of exchange drawn in good faith against actually existing values, and the discount of commercial or business paper upon solvent parties and actually owned by the person negotiating the same, shall not be considered as money borrowed; Provided, that loans secured by collateral security having an ascertained market value of at least fifteen per cent more than the amount of the loans secured, shall not be limited by this section.'' Rem. Rev. Stat., § 3258.

''No bank or trust company shall, nor shall any officer or employee thereof on behalf of such corporation, directly or indirectly, loan any sum of money to any director, officer or employee of such corporation, unless a resolution authorizing the same and approved by a majority of the directors, at a meeting at which no director, officer or employee to whom the loan is to be made shall be present, shall be entered in the corporate minutes.

''Every director and officer of any bank or trust company who shall borrow or shall knowingly permit any of its directors, officers or employees to borrow, any of its funds in an excessive amount or in violation of

the provisions of this section, shall be personally liable for any loss or damage which the corporation, its shareholders or any person may sustain in consequence thereof, and shall also be guilty of a felony." Rem. Rev. Stat., § 3259.

■ It clearly appears, as summarized below, that there was evidence—competent and sufficient—to warrant the jury in concluding, as it did, that, on or about September 30, 1931, while a director of the American Bank of Spokane, the appellant borrowed money from that bank without a resolution authorizing the same as required by the statute (Rem. Rev. Stat., § 3259); and that the appellant, on the same date, while a director of the same bank, personally, and through the agency of a corporation which was his *alter ego,* borrowed for himself from that bank an amount of money in excess of twenty per cent of the capital stock and surplus of the bank.

The capitalization and surplus of the American Bank of Spokane, a domestic corporation now in course of liquidation, totaled five hundred thousand dollars on September 30, 1931, at which time the appellant was a director of that bank. No one person could legally borrow from the bank an amount in excess of one hundred thousand dollars. The appellant was a director, hence he could not lawfully borrow, in the absence of a resolution by the board of directors authorizing the loan, any sum of money from the bank.

The court refused to admit in evidence the minutes of the meeting of February 10, 1931, of the directors of the bank, at which meeting the appellant was not present. At that meeting, the directors passed a blanket resolution authorizing a line of credit to all of the directors of the bank. By that blanket resolution, a line of credit amounting to one hundred thousand

dollars, the maximum any one could legally borrow from the bank, was extended to the appellant.

The appellant owned ninety-nine per cent ($149,000) of the shares of capital stock of the Reserved Securities Company, a domestic corporation. The note indebtedness of appellant to the bank, on September 30, 1931, was $45,854.85. The indebtedness of the Reserved Securities Company to the bank, at that time, amounted to $99,274.86.

On September 30, 1931, two notes (Nos. 3168 and 3169) of $100,000 each, both payable to the American Bank of Spokane, were prepared by the loan department of the bank. One of the notes was signed by the appellant personally and the other was signed by him as president of the Reserved Securities Company. The appellant discussed with the vice-president of the bank the matter of the disposition of the proceeds of the two loans. It was agreed that the money was to be applied to the payment of the indebtedness of the Reserved Securities Company to the bank and the appellant's personal indebtedness to the bank, the balance in each instance to be placed in the American Company special account.

As stated above, the indebtedness, respectively, of the securities company and the appellant to the bank amounted to $99,274.86 and $45,854.85. The securities company's balance of $725.14 added to the balance of $54,145.15 in favor of appellant, make a total of $54,-870.29, which was deposited, as the appellant directed, to the credit of the American Company special account in the American Bank of Spokane. The bank's loan and discount journal for September 30, 1931, lists the two notes as "new" notes and not as "renewal" notes. Other than the directors' minutes mentioned above, there was no evidence of authorization of the two loans.

■ It was not necessary for the state to show that appellant had access to the American Company's special account, or that he ever withdrew any of the money from that account. The state showed—that was all that was necessary to make out a *prima facie* case—the extension of credit (a loan) to the appellant, which was utilized for payment of indebtedness to the bank and the balance deposited, as the appellant directed, to the credit of an account other than his personal account or the account of his securities company. The appellant exercised dominion over the money. He directed the disposition of it, and in writing expressly agreed to return or pay, with interest, the amount advanced.

Whether or not the transaction was personally profitable to the appellant, is not material. The law does not require a showing of personal profit before a loan or a borrowing can be held to be consummated.

"A loan is made when the borrower receives money over which he exercises dominion, and which he expressly or impliedly promises to return." *First Bank of Cordova v. Tjosevig*, 138 Wash. 231, 244 Pac. 736.

Rem. Rev. Stat., § 3259, provides that every director of a bank who borrows any of the bank's funds in violation of the provisions of that section, shall be guilty of a felony. As we said in *State v. Lindberg*, 125 Wash. 51, 215 Pac. 41:

"Clearly, to our minds, this is a provision directed against the borrowing officer, and makes him guilty of a felony if the borrowing is in violation of the provisions of the act. . . .

"Nor was it necessary that the state allege and prove a financial loss as a result of the borrowing. By the terms of the statute, the crime is complete when the borrowing is consummated without a compliance with the statutory requirements; loss of the money borrowed is not an element of the offense."

In *State v. Lynch,* 50 S. Dak. 564, 210 N. W. 988, the appellant insisted that it was incumbent, under a statute similar to that in the case at bar, upon the state to show that the bank parted with the money. The court said:

"Appellant, who was cashier of the First State Bank of Elkton, was convicted of a violation of sections 8980 and 8981, Code of 1919. Section 8980 provides:

" 'In no case shall the total liabilities of the several stockholders of any bank, including any and all liabilities . . . to such bank, exceed 50% of the paid up capital of such bank.'

"And section 8981 provides that:

" 'Any officer, director or employe of any bank . . . who shall knowingly permit shareholders of such bank to at any one time become indebted to such bank in a total sum exceeding fifty per cent of the paid-up capital of such bank, as prescribed by the preceding section, shall be deemed guilty of a felony.'

"The paid-up capital of the said bank was $20,000. The bank suspended and was taken over by the superintendent of banks for liquidation. Among the assets of the bank were found notes signed by the various stockholders, aggregating considerably more than 50 per cent of the paid-up capital of the bank. The information charges that the indebtedness evidenced by these notes was for funds of the bank 'loaned and advanced' by appellant to said stockholders, whereas the evidence shows that said notes had been taken by appellant in lieu of other notes that had constituted a part of the assets of the bank, and that, as a matter of fact, no cash had been parted with by the bank when the notes in question were taken by appellant. This state of the case, appellant contends, constitutes such a variance between the allegation in the information and the proof adduced by the state that the conviction cannot stand, and it is the matter of this claimed variance that constitutes the one important question to be determined in the case.

"It was not necessary to allege in the information that the indebtedness had been created by 'loaning or advancing the funds of the bank.' The offense is committed by knowingly permitting the shareholders to become indebted to the bank in sums aggregating more than 50 per cent of the bank's paid-up capital. It is not material whether the indebtedness is for cash advanced, notes discounted, for property sold, or for notes charged off and surrendered, even though the notes of the shareholders are more valuable than the notes so surrendered. Therefore the allegation in the information that the notes in question were taken for funds loaned and advanced is mere surplusage. As a general rule, it is sufficient, in charging a statutory offense, to follow the language of the statute. *State v. Heck*, 23 Minn. 549, citing 1 Bishop Crim. Proc., § 359 *et seq.*"

The supreme court of Florida in *Browning v. State*, 101 Fla. 1051, 133 So. 847, addressing itself to the question of the extension of a line of credit to a director of a bank, employed the following language, which is just as applicable to the case at bar:

"A bank loans credit. It deals in credit with its patrons. When a loan is made for a certain amount rarely if ever is the money paid over to the borrower, but his account is credited with the amount of the loan less the discount and a credit is extended to him at the Bank to the amount of such loan. Rarely if ever does the transaction involve other property. If it ever did it would be a matter of bargain and sale and not a banking loan.

"When one applies to a bank for a 'loan' he does not have in mind any of the bank furniture or its worthless bills receivable. He has in mind a line of credit measured by the amount of the loan. The statute seeks to prevent the officers of a bank from monopolizing the institution's limit of credit which it may sell by the so-called loan."

Counsel for appellant next insist that the court erred in its rejection of the offers to prove that

the American Company was a domestic corporation whose capital stock was owned at all times by the American Bank, and that the American Company was operated exclusively for the benefit of the American Bank;

". . . that all the money left over after the payment of the past-due notes was transferred to an account known as American Company Special, which American Company was owned and controlled entirely by the American Bank and not at all by the defendant, and the action was taken and things done only for the accommodation of the bank and for its benefit."

Therefore, as the bank never lost control of the money, and as the appellant had no right at any time to gain possession of it, "the defendant did not *borrow* any money of the bank, nor did the bank *loan* any money to the defendant or to the Reserved Securities Company."

The evidence on behalf of the state showed, as recited above, that the loan was actually made by the bank of which appellant was a director. The proffered testimony was correctly excluded. The showing attempted to be made by appellant went to the question of good faith. Intent is not a necessary element of the crime of which appellant was convicted. The actual borrowing from the bank by the appellant while he was a director thereof, without a compliance with the statutory requirements, makes him guilty of a violation of the statute, no matter what he may have intended or what disposition he made of the money after he borrowed it.

In the case of *State v. Lindberg,* 125 Wash. 51, 215 Pac. 41, the defendant appealed from a conviction on a charge of having borrowed, while a director thereof, money from a bank without a resolution authorizing the loan, approved by a majority of the directors of

the bank at a meeting at which he was not present. It was contended in that case that the trial court erred in the exclusion of evidence which tended to show that the appellant had no knowledge of the fact that the loan was actually made by the bank in which he was a director. The objection to the testimony was sustained on the ground that the facts stated did not constitute a defense to the crime charged.

In sustaining the trial court's holding that intent was not a necessary element of the crime, and that the appellant was guilty of a violation of the statute notwithstanding he may have thought the money was obtained from another source, if there was an actual borrowing from the bank by the appellant while he was a director thereof without a compliance with the statutory requirements, we said:

"Turning to the statute it will be observed that the term 'knowingly' is not used in defining the offense; nor are apt words used from which it can be inferred that guilty knowledge was intended to be made an essential element of the crime. If, therefore, this element is to be found in the statute, it must be so for reasons apart from its literal wording.

"With respect to intent as constituting an element of an offense, there is a well-recognized distinction between statutes denouncing as crimes acts *mala in se,* and statutes denouncing as crimes acts *mala prohibita.* In the former, generally speaking, intent is a necessary element, while in the latter it is not so. These principles are not, perhaps, of uniform application in either class, and, perhaps also, less so in the latter than in the former. But the courts generally hold that, where statutes falling within the latter class are in the nature of police regulations, are for the protection of the public, or are intended to promote the general welfare, intent is not a necessary element of the offense, unless the statute in express terms or by apt words so declares. We have ourselves followed this general rule."

110

Though the borrowing were, as appellant contends, for the accommodation of the bank, such showing of good faith was not competent and material in a case of the character of the one at bar. Conceding, for the sake of argument, that the transaction was for the accommodation of the bank, it was none the less a borrowing within the meaning of the statute. It is singular that, if the borrowing was, in fact, for the benefit of the bank, the appellant paid his own indebtedness and that of the Reserved Securities Company instead of placing the entire $200,000 to the credit of the American Company, as he claims. Surely, if the loan were for the accommodation of the bank, through its creature the American Company, all of the $200,000 would have been deposited to the credit of the American Company.

Appellant argues that the blanket resolution made by the board of directors, February 10, 1931, authorizing a line of credit to all directors, was a sufficient compliance with the statute. We held in *State v. Larson,* 119 Wash. 123, 204 Pac. 1041, that there was no uncertainty in the language of the statute in question, and that, fairly construed, it means that, when an officer of a bank desires to obtain a loan from that bank, he must procure a resolution authorizing the same, and approved by a majority of the directors at a meeting at which the officer or director to whom the loan is to be made shall not be present. We said:

"The obvious effect of this language is that, before the borrowing is consummated, there must be such a resolution, and it must have been passed as required by the statute."

The purpose of the law is plainly apparent. It is to prohibit any loan to an officer of the bank unless that particular loan has been passed upon by the board of directors. In disapproval of a blanket reso-

lution like that in the case at bar, the supreme court of Iowa, in *German Savings Bank v. Des Moines National Bank,* 122 Ia. 737, 98 N. W. 606, said:

"The manifest purpose of the law is to prohibit any loan to an officer of the bank unless that particular loan had been passed upon by the board of directors. Every such loan is to be separately considered, and the propriety of making it determined by the board, independently of any action on the part of the applicant. He is excluded from its deliberations in order to insure freedom of inquiry and discussion. Even with these safeguards, the influence of intimate association is often more potent than business discretion. Indeed, the confidence ordinarily reposed in the managing officers of a bank both by directors and the public is such that to permit a loan of its money, or that due depositors, to them, under any circumstances, seems of doubtful propriety. It is the most frequent cause of failure, and the occasion of great loss to patrons whose deposits many times exceed the capital stock of the bank. But it is enough now to say that any loan to an officer of the bank not passed upon by the board of directors was illegal, and a blanket resolution like that adopted will afford no protection."

In *State v. Duckett,* 133 S. C. 85, 130 S. E. 340, the defense interposed to the charge of borrowing without authorization by the directors was unavailing. It appears that the defendant was charged with having borrowed the money in question on March 17, 1922, and the defendant testified that the money was borrowed March 4, 1920. On February 5, 1920, the board of directors of the bank, by blanket resolution, authorized the officers of the bank to make legal loans to officers and directors. The form purporting to be the authority conferred by the board of directors was substantially the form which was in use by the bank examiner's department. In affirming the judgment, the court said:

"The question of intent is not a necessary element of the offense. If an act be done by which the terms of the statute are violated, the offense is complete, regardless of the intent . . . it appears that the defendant had acted under a form of approval recognized and used in the conduct of banks. Yet, when the mandate of the statute is invoked, the statute must govern, and the fact that the defendant followed a proceeding recognized and established, with no intent to defraud, cannot absolve him from the penalties fixed by statute. Approval implies knowledge and, in this case, the exercise of discretion after knowledge. To approve beforehand would be without knowledge and without the exercise of discretion.

"No matter how disagreeable it is to pronounce a judgment like this, when the law requires it, it has to be done."

The statute clearly provides for the exercise, by a majority of the board of directors, of discretion with reference to a particular loan. A mere blanket authorization for a line of credit, made at the beginning of the year, is not a compliance with the statutory requirement.

That the state banking department never condemned such practice, is of no moment. The failure of the officials of the state banking department to perform their duty cannot absolve the appellant. We have never held, and are not inclined to now hold, that the departmental construction of the statute, if contrary to the clear intent of the statute, will be followed.

■ It is further contended that the court erred in not permitting the appellant to prove that, prior to his departure in September, 1929, on a trip to foreign lands, he turned in to the bank, in trust, his private property, and also turned over to the care of the bank all of the property of the Reserved Securities Company, including $46,000 in cash of the securities company.

Whether the property of the appellant and of his Reserved Securities Company was dissipated by the officials of the American Bank during the appellant's absence abroad, is not material. The question of the good faith of the appellant is not material. Good faith is not an element of the offense with which the appellant is charged.

■ Finally, appellant urges that the question whether the appellant was responsible for the loan to the Reserved Securities Company should not have been submitted to the jury. It is argued that the securities company was a corporate entity, separate and distinct from the appellant, who owned all of the stock of that corporation,

". . . and the owner of substantially all the stock of a corporation is not liable as for a violation of law against excess loans if his personal borrowing, together with the borrowing of a corporation in which he owns substantially all the stock, together exceed the amount which he as a director of the bank might lawfully borrow for himself."

Where, through the agency of a corporation, one attempts to contravene a statute, the corporate entity will be disregarded. The notion of legal entity may not be successfully invoked to defend against a violation of the criminal law.

"When the corporation is the mere alter ego, or business conduit of a person, it may be disregarded." 1 Fletcher, Cyc. Corporations 136, § 41.

If one corporation so dominates and controls another as to make that other merely an adjunct to it, the courts will look beyond the fiction of distinct corporate entity. *Briggs & Co. v. Harper Clay Products Co.,* 150 Wash. 235, 272 Pac. 962. So, too, where a private person so dominates and controls a corporation that such corporation is his *alter ego,* a court is

justified in piercing the veil of corporate entity and holding that the corporation and private person are one and the same.

Appellant owned ninety-nine per cent of the shares of capital stock of the Reserved Securities Company. The financial statement of that company, dated November 30, 1930, filed with the American Bank, is headed "balance sheet," and shows, under the items of liabilities, its capital as $149,000; in fact, all of the capital stock of the Reserved Securities Company was owned by the appellant. His personal financial statement, filed November 30, 1930, with the bank, and entitled "balance sheet" showed, under the head of assets, Reserved Securities Company stock of the value of $149,000. It fairly appears that the Reserved Securities Company was the business conduit of the appellant.

One may not, by a corporate form of organization, or by utilizing a corporate entity, succeed in the attempt to evade a legal obligation or escape punishment for breach of a criminal statute.

"Where the corporate form of organization is adopted or a corporate entity is asserted in an endeavor to evade a statute or to modify its intent, courts will disregard the corporation or its entity and look at the substance and reality of the matter." 1 Fletcher, Cyc. Corporations 170, § 45.

The evidence was sufficient to warrant a conviction on the charge of unauthorized borrowing and the charge of excessive borrowing in violation of Rem. Rev. Stat., §§ 3258 and 3259.

Our examination of the record does not disclose that the trial court committed reversible error. It follows that the judgment must be, and it is, affirmed.

BEALS, C. J., MITCHELL, MAIN, and STEINERT, JJ., concur.