# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| SAWYER FALLS CO., L.L.C., a Washington Limited liability company, | No.  55811-4-II |
| Appellant, | |
| v. | ORDER AMENDING UNPUBLISHED OPINION |
| CAPRI INVESTMENTS, L.L.C., a Washington limited liability company; RENAISSANCE UNITED LIMITED, a Singapore exchange-listed entity; and any other individual/entity claiming any right, title, lien or other interest in the real property described herein, | |
| Respondents, | |
| v. | |
| WONG CHIN YONG; LEONARD TEOH HOOI LEONG, | |
| Third-Party Defendants. | |

On February 7, 2023, Sawyer Falls Co. LLC, filed a motion to recall the mandate issued on December 31, 2022, in the above-entitled matter.  That motion was granted and the mandate was recalled.  After consideration, it is hereby

**ORDERED** that this court's June 14, 2022, unpublished opinion in the above-entitled matter is amended as follows:

In the last paragraph on page 17 beginning with "Both parties," the following final sentence of that paragraph is deleted:

No. 55811-4-II

> Because we reverse the trial court's entry of summary judgment and remand for further proceedings, we decline to award either party their fees on appeal and leave the question of any future award of attorney fees to the determination of the trial court.

And the following sentences are inserted in its place:

> Because we reverse the trial court's entry of summary judgment, we reverse the superior court's award of attorney fees for Respondents. Further, we decline to award either party their attorney fees on appeal. On remand, the trial court may consider any motions for attorney fees related to all proceedings at the trial court.

**SO ORDERED**.

**PANEL:** Jj. GLASGOW, CRUSER, PRICE

**FOR THE COURT:**

_____
PRICE, J.

We concur:

_____
GLASGOW, CJ.

_____
CRUSER, J.

2

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| SAWYER FALLS CO., L.L.C., a Washington Limited liability company, | No.  55811-4-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| CAPRI INVESTMENTS, L.L.C., a Washington limited liability company; RENAISSANCE UNITED LIMITED, a Singapore exchange-listed entity; and any other individual/entity claiming any right, title, lien or other interest in the real property described herein, | |
| Respondents, | |
| v. | |
| WONG CHIN YONG; LEONARD TEOH HOOI LEONG, | |
| Third-Party Defendants. | |

PRICE, J. — Sawyer Falls Co., LLC (SFC) appeals the superior court's entry for summary judgment for Capri Investments, LLC (Capri) and Renaissance United Limited with regard to SFC's breach of contract claims.  On appeal, SFC argues that: (1) the agreement tolling the statute of limitations was valid when it was entered into, (2) Capri's agreement to pay under the Indeterminate Amount is a valid written contract subject to the six-year statute of limitations, and (3) Capri is the "alter ego" of Renaissance Untied Limited and therefore, SFC can pierce the corporation veil and include Renaissance United Limited in its claims for breach of contract.  We

agree with SFC regarding its first two arguments but disagree regarding the third. Accordingly, we reverse in part and affirm in part.

FACTS

I. BACKGROUND

SFC, a Washington limited liability company (LLC), owned a large, 450+ acre parcel of property for residential development. The LLC members were Newton Centre Development, Ltd.,[1] a British Virgin Islands (BVI) company and Innopac Holdings Limited, headquartered in Singapore.

In 2002, SFC sold the property to Capri, also a Washington LLC. Capri's sole owner was Renaissance United Limited (RUL), a Singapore entity.

To secure the purchase of the property, Capri executed a promissory note on July 22, 2002, in favor of SFC. The promissory note anticipated that Capri would engage in phased construction on the property and outlined two separate payment obligations, one for a "Fixed Amount" and one for an "Indeterminate Amount." Payment under the Fixed Amount was due in 2014, 12 years following the date of the note. Payment under the Indeterminate Amount was due in 2016, 14 years following the date of the note. Assuming a six-year statute of limitations applied to the Fixed Amount agreement, the statute of limitations for a failure to pay claim would run in 2020. *See* RCW 4.16.040(1).

---

[1] With the use of the suffix "Ltd.," Newton is identified as a limited company. Neither party argues that this specific business type as compared to other business types has relevance to the issues addressed here.

During this time, SFC had internal complications with its membership. SFC's LLC agreement gave its member, Newton, a BVI entity, the sole authority to appoint the managers of SFC. But unbeknownst to SFC, Newton was stricken from the Registry of Companies of the British Virgin Islands in 2017 for its inadvertent failure to pay its annual licensing fees. However, it was not dissolved, meaning it was eligible for restoration under BVI law.

In 2018, during the time that Newton was stricken from the BVI registry, Newton continued to be active. For example, it agreed to amend the LLC agreement to give SFC's other member, Innopac, the right to appoint and remove managers of SFC. The amendment removed all current SFC managers and replaced them with Innopac's chosen managers, Wong Chin Yong and Phillip Leng Yew Chee.

Meanwhile, Capri failed to complete the construction phases and failed to make payment under either of its obligations. The new SFC manager, Wong, was subsequently given authority to act on behalf of SFC with regard to its potential claims against Capri for these failures. On July 16, 2020, SFC informed Capri that it intended to pursue claims under the promissory note.

The parties engaged in negotiations. Because the six-year statute of limitations deadline for the Fixed Amount (July 22, 2020) was quickly approaching, Wong entered into an agreement with Capri tolling the statute of limitations for the promissory note until September 30, 2020. The agreement stated, "This Agreement shall be interpreted and enforced according to the laws of the State of Washington." Clerk's Papers (CP) at 21. Wong also entered into additional agreements to amend the initial tolling agreement so as to further extend the deadline to October 21, 2020 and November 31, 2020.

After the parties were apparently unable to reach a resolution, SFC brought an action against Capri and RUL (collectively referred to as Respondents) raising various claims including breach of contract for Capri's failure to make payment under the promissory note. SFC argued that RUL, as the sole owner and "alter ego" of Capri, should also be liable. CP at 2.

In their answer, Respondents raised several affirmative defenses including the statute of limitations, fault of plaintiff, and mutual mistake. Respondents also brought counterclaims for equitable modification, reformation of the promissory note, and equitable rescission of the tolling agreement.

Following the initiation of the lawsuit, all parties became aware, for the first time, that Newton had not been validly registered in BVI since 2017. Quickly thereafter, Newton reinstated its administrative status and was restored to the BVI registry on February 25, 2021. SFC argued that this restoration retroactively cured any deficiency.

## II. SUMMARY JUDGMENT

On February 8, 2021, SFC moved for partial summary judgment against the Respondents solely on the issue of Capri's failure to make payment on its obligations under the promissory note for both the Fixed Amount and the Indeterminate Amount.

Respondents cross-moved for partial summary judgment on February 26, 2021. Respondents argued that since Newton was unregistered when it agreed to amend SFC's LLC agreement, all of SFC's actions under the amended LLC agreement were invalid, including appointing Wong as a manager and executing the agreement tolling the statute of limitations. Therefore, SFC's claims were barred by the statute of limitations.

4

Respondents also argued that the Indeterminate Amount agreement was insufficiently certain in its terms to be a "written contract" and, therefore, any claims related to it would be subject to a three-year statute of limitations, not the typical six-year statute applicable to written contracts. CP at 95-98. As such, SFC's claim under the Indeterminate Amount was barred regardless of the validity of the tolling agreement. Finally, Respondents argued that RUL was not the "alter ego" of Capri, and therefore, SFC's claims against RUL should be dismissed.

In response, SFC provided a certificate from the BVI registrar that stated that, as of March 8, 2021, Newton was in "good standing" and listed on the BVI registry. CP at 811. SFC also produced a declaration from a former manager of SFC explaining that Newton had been stricken from the registry "due to its inadvertent failure to comply with the BVI's annual licensing renewal requirements but has since been restored to the BVI Registry as of February 25, 2021." CP at 808. SFC also argued that the terms of the Indeterminate Amount agreement were sufficiently certain to be considered a written agreement. And, finally, SFC defended its inclusion of RUL in the lawsuit by arguing that Capri and RUL commingled their assets to such an extent that RUL's corporate veil should be pierced.

The superior court granted Respondents' motion for partial summary judgment, dismissing SFC's claim for breach of contract on statute of limitations grounds. SFC filed a motion for reconsideration that the superior court also denied.

SFC appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

We review summary judgment motions de novo. *M.E. through McKasy v. City of Tacoma*, 15 Wn. App. 2d 21, 31, 471 P.3d 950 (2020), *review denied*, 196 Wn.2d 1035 (2021). "Summary judgment is appropriate if the pleadings, affidavits, depositions, and admissions demonstrate the absence of any genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*; CR 56(c). A fact is material if it affects the outcome of the litigation. *Id.*

### II. EFFECT OF REINSTATEMENT

#### A. LEGAL PRINCIPLES

Under BVI law, when a company has been struck from the register but not dissolved, it may be reinstated:

> Where a company has been struck off the Register, but not dissolved, the Registrar may, upon receipt of an application in the approved form and upon payment of the restoration fee and all outstanding fees and penalties, restore the company to the Register and issue a certificate of restoration to the Register.

CP at 172 (The BVI Business Companies Act of 2004 § 217(1)). "Where a company is restored to the Register under this section, *the company is deemed never to have been struck off the Register*." CP at 172 (§ 217(6)) (emphasis added).

Similarly, Washington law allows for reinstatement of an LLC that has been administratively dissolved for failure to pay its fees to the secretary of state. RCW 23.95.615(1), 23.95.610, 23.95.605(1). Reinstatement "relates back to and takes effect as of the effective date of the administrative dissolution." RCW 23.95.615(4)(a). Furthermore:

> The domestic entity resumes carrying on its activities and affairs *as if the administrative dissolution had never occurred*, except for the rights of a person

> arising out of an act or omission in reliance on the dissolution before the person knew or had reason to know of the reinstatement.

RCW 23.95.615(4)(b) (emphasis added). Washington law also has identical provisions that apply to corporations. *See* RCW 23.95.605(1), .610(1), .615(1) and (4). BVI and Washington both share what has been characterized as the majority rule. *See Fairbanks Arctic Blind Co. v. Prather & Assoc., Inc.*, 198 S.W.3d 143, 144 (Ky. 2005) ("The majority rule [among states] is that reinstatement validates a dissolved corporation's interim acts.").

The purpose of these reinstatement provisions, which provide that the action of reinstatement "relates back" as if the administrative dissolution had never occurred, is to "create a seamless functional existence when the company wishes to continue doing business rather than closing up shop." *Pannell v. Shannon*, 425 S.W.3d 58, 74 (Ky. 2014). The reasoning behind permitting this seamless functional existence is that a "failure to pay franchise taxes is an issue solely between the [entity] and the State since the franchise tax statutes are for revenue[-]raising purposes alone." *Frederic G. Krapf & Son, Inc. v. Gorson*, 243 A.2d 713, 715 (Del. 1968); *William A. Eastman & Co. v. Watson*, 72 Wn. 522, 524-25, 130 P. 1144 (1913) (annual licensing fee statute " 'is a revenue measure, and the prohibition of suits or actions on the part of corporations without alleging and proving payment of the license fee is intended as a measure to enforce the collection of the tax' ") (quoting *North Star Trading Co. v. Alaska-Yukon-Pac. Exposition*, 63 Wn. 376, 379, 115 P. 855 (1911), *rev'd on other grounds by* 69 Wn. 457, 123 P.2d 605 (1912)). An entity's failure to pay fees has no effect on its ability to operate as an entity outside of its relationship with the state. *See Gorson*, 243 A.2d at 715.

B. APPLICATION

SFC argues that under BVI law, Wong's appointment as a manager of SFC was valid because Newton was reinstated and, therefore, the tolling agreements for the statute of limitations he negotiated and executed were also valid. We agree.

At oral argument, both parties conceded that there is no meaningful difference under either BVI or Washington law for this case. Under both BVI and Washington law, once Newton was reinstated, the reinstatement related back as if Newton was never dissolved. Thus, Wong's appointment as a manager of SFC was valid at the time it was entered. As a result, Wong had authority to enter into agreements with Capri on SFC's behalf to toll the statute of limitations for claims regarding the promissory note.

Respondents argue that "ratification" of an "unauthorized action" cannot act to toll a statute of limitations. Resp't Br. at 17. Respondents cite to several agency cases for the proposition that " '[t]he bringing of an action, or of an appeal, by a purported agency [cannot] be ratified after the cause of action or the right to appeal has been terminated by lapse of time.' " Resp't Br. at 18 (quoting RESTATEMENT (SECOND) OF AGENCY: RATIFICATION § 90, at 230 (AM. LAW INST. 1958)). In each of the cases on which Respondents rely, an action that was invalid or unauthorized at the time it was taken was subsequently ratified after the passing of the deadline to take the action.[2] Each of the courts concluded that these "after-the-fact" authorizations did not relate back to the

---

[2] *Fed. Election Comm'n v. NRA Pol. Victory Fund*, 513 U.S. 88, 115 S. Ct. 537, 130 L. Ed. 2d 439 (1994); *Miernicki v. Duluth Curling Club*, 699 N.W.2d 787 (Minn. Ct. App. 2005); *Town of Nasewaupee v. City of Sturgeon Bay*, 251 N.W.2d 845 (Wis. 1977); *First Telebanc Corp. v. First Union Corp.*, No. 02-80715-CIV-GOLD/TURNOFF, 2007 WL 9702557 (S.D. Fl., Aug. 6, 2007); *Township of North Fayette v. Guyaux*, 992 A.2d 904 (Pa. Super. Ct. 2010); *In re W.R. Grace & Co.*, 366 B.R. 302 (Bankr. D. Del. 2007).

date of the action to make them timely. Respondents argue that this principle also applies here. They contend that because Newton was not reinstated to the BVI registry until after the statute of limitations had run, Newton's reinstatement cannot retroactively ratify the tolling agreement to thereby extend the statute of limitations.

However, Respondents erroneously conflate the concepts of "relating back" and ratification. Unlike the cases Respondents rely on, there was no after-the-fact ratification of the tolling agreements after that statute of limitations had passed. Here, because the reinstatement of Newton related back as if it had never been removed from the BVI registry, the tolling agreements are deemed to have been valid and authorized on the date they were entered.

Respondents argue that SFC's position undermines the purpose of the statute of limitations and renders it meaningless by exposing defendants to liability for an "indefinite period of time." Resp't Br. at 31-33. According to Respondents, " 'The purpose of the statute of limitations is to compel actions to be commenced within what the legislature deemed to be a reasonable time, and not postponed indefinitely.' " *Sidis v. Brodie/Dohrmann, Inc.*, 117 Wn.2d 325, 330, 815 P.2d 781 (1991) (quoting *Summerrise v. Stephens*, 75 Wn.2d 808, 812, 454 P.2d 224 (1969)); Resp't Br. at 32. Respondents claim that acceptance of SFC's position would permit litigants to "sit on their hands" and then belatedly ratify an unauthorized action. Resp't Br. at 33.

Beyond repeating their conflation of the concepts of ratification and reinstatement, Respondents also exaggerate the implications for the statute of limitations on these facts. No party "sat on their hands." Prior to the running of the statute of limitations, SFC approached Capri about entering into a tolling agreement, and Capri agreed to do so. Respondents were not exposed to potential liability for an indefinite period of time, rather it was only for the precise time period to

9

which Capri agreed. Therefore, a finding in favor of SFC does not undermine the purpose of the statute of limitations as Respondents argue.

Respondents' complaints are similar to those of the United States in a case involving the government's contract with a construction company. *Holpuch Co. v. United States*, 102 Ct. Cl. 795, 58 F. Supp. 560 (Ct. Cl. 1945). In *Holpuch*, the plaintiff construction company negotiated the contract with the United States at the time when it happened to be administratively dissolved. 102 Ct. Cl. at 799-800. When the company sued the United States for breach of the contract, the United States argued that the contract was null and void because it was negotiated and entered while the company was dissolved. *Id.* at 800. The court disagreed, holding that the subsequent corporate reinstatement of the company validated the "exercise of the corporate franchise," and explained:

> [T]he defendant here [the United States] cannot complain; its rights were in nowise prejudiced thereby. Only the State levying the taxes is interested in the nonenforcement of contracts entered into without prior payment of them. The other contracting party is not injured thereby. If defendant has breached its contract with plaintiff, certainly it should not escape liability therefore because the corporation did not pay its taxes when due, where the State, in consideration of the payment of penalties, has forgiven the corporation therefor.

*Id.* at 802.

As in *Holpuch*, Newton's failure to pay its fees to the BVI registry did not prejudice Capri or otherwise impact its rights under the promissory note. Accordingly, we determine that SFC had the authority to enter into the tolling agreement and, therefore, reverse the superior court's entry of summary judgment in favor of Respondents on this issue.

### III. INDETERMINATE AMOUNT

The parties next dispute whether SFC's claims related to the Indeterminate Amount should be dismissed on statute of limitations grounds. SFC argues that the Indeterminate Amount was a complete written contract and, therefore, subject to a six-year statute of limitations. Because it is subject to a six-year statute of limitations and the payment became due in 2016, SFC argues that its claim under the Indeterminate Amount was not untimely regardless of the validity of the tolling agreement. Respondents counter that the Indeterminate Amount was too indefinite to be considered a written contract and, therefore, is subject to a three-year statute of limitations, making SFC's claims untimely. We agree with SFC.

### A. LEGAL PRINCIPLES

Under Washington law, an action on a written agreement is subject to a six-year statute of limitations. RCW 4.16.040(1). An action on an oral agreement is subject to a three-year statute of limitations. RCW 4.16.080(3).

To be subject to the six-year statute of limitations, a written agreement must contain all the essential elements of a contract: the subject matter, parties, terms and conditions, and price or consideration. *Browning v. Howerton*, 92 Wn. App. 644, 649, 966 P.2d 367 (1998). "If resort to parol evidence is necessary to establish any material element, the contract is partly oral and the three-year statute of limitations applies." *Id.*

Although the price or consideration is an essential element of a contract, the exact amount of compensation need not be specified for the contract to be a valid written agreement:

> The general rule is that failure to agree upon the precise amount of compensation does not defeat the existence of a contract. In other words, once the fact of compensation is established, failure to agree upon the precise degree of

11

compensation does not vitiate the performing party's right to reasonable compensation.

*Rutcosky v. Tracy*, 89 Wn.2d 606, 610, 574 P.2d 382 (1978). " '[I]f a promise indefinite as to price is capable of being made certain by an objective standard through extrinsic facts, it will be enforced.' " *Kloss v. Honeywell, Inc.*, 77 Wn. App. 294, 299, 890 P.2d 480 (1995) (quoting 1 S. Williston, *Contracts* § 4:22, 518–520 (4th ed. 1992)).

B. APPLICATION

SFC argues that the indeterminate amount was a valid written contract and is therefore subject to the six-year statute of limitations. Respondents argue that because the Indeterminate Amount did not set a specific amount due to SFC, it is a partly oral contract and therefore subject to the three-year subject of statute of limitations. We determine that the Indeterminate Amount provision is a valid written contract that is subject to the six-year statute of limitations.

The Indeterminate Amount provision states:

> The maker shall fully develop, at the maker's sole expense, and *shall pay to the holder the net proceeds* from the sale of an additional eighty-five (85) single-family residential lots within the final development phase of Falling Water [the property] after deduction of (i) the costs of sale, including but not limited to, marketing expenses and real estate commission fees and other closing costs, including but not limited to, accrued real estate taxes, excise taxes, title insurance, escrow fees and related closing costs of each of the eighty-five (85) lots, and (ii) pro-rata traffic, parks, schools mitigation fees and related utility fees allocable to each of the eighty-five (85) lots. *The specific lots within the final development phase of Falling Water to which this obligation shall apply shall be selected solely by the maker.* The net proceeds payable with respect each of said lots, shall be due contemporaneously with the conveyance thereof. The maker shall have completed making all payments required by this Paragraph 2 within fourteen (14) years following the date of this Note.

CP at 10-11 (emphasis added).

As SFC points out, Respondents appear to be arguing that because the term regarding the amount payable due to SFC under the Indeterminate Amount needs additional information, it is "missing." Reply Br. of Appellant at 16. This proposition is unsupported by case law. A failure to state a specific amount of compensation does not mean the term is missing. The Indeterminate Amount requires that Capri pay to SFC the net proceeds from the sale of 85 lots. Although the provision does not specify the actual amount due, it provides a clear method for calculating the proceeds. Moreover, although the provision allows Capri to choose which lots it will pay the proceeds from, this discretion does not mean that the term setting the amount due is missing from the provision. Because Capri's promise to pay is capable of being made certain through extrinsic facts, it is therefore enforceable and the promise to pay under the Indeterminate Amount was sufficient for a valid written contract.[3] Accordingly, we hold that the Indeterminate Amount is governed by a six-year statute of limitations.

## IV. PIERCING THE CORPORATE VEIL

Respondents challenge the inclusion of RUL in this suit because it was not a contracting party to the promissory note. SFC argues that RUL is the "alter ego" of Capri, and therefore, it can "pierce the veil" and include RUL in its claim for breach of contract. Because RUL, as the sole owner of Capri, commingled assets and received profits from Capri's sale of the land covered by the promissory note, SFC argues that RUL is also liable for the breach of contract. We disagree.

---

[3] Respondents also appear to argue on appeal that Capri was excused from performance because the Indeterminate Amount contained a condition precedent to Capri's duty to make a payment that did not occur. However, because SFC's motion for summary judgment was limited in scope to a determination that Capri did not make payments under the promissory note and left unaddressed all of Respondent's affirmative defenses and counterclaims, we refrain from addressing this issue.

A. LEGAL PRINCIPLES

An LLC "is a statutory business structure that is like a corporation in that members of the company are generally not personally liable for the debts or obligations of the company." *Chadwick Farms Owners Ass'n v. FHC, LLC*, 166 Wn.2d 178, 186-87, 207 P.3d 1251 (2009). " 'It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation [or LLC] (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.' " *Minton v. Ralston Purina Co.*, 146 Wn.2d 385, 398, 47 P.3d 556 (2002) (internal quotations omitted) (quoting *United States v. Bestfoods*, 524 U.S. 51, 61, 118 S. Ct. 876, 141 L. Ed. 2d 43 (1998)). However, under certain circumstances, where respecting the LLC form would result in injustice, courts may disregard the separate existence of the LLC and impose personal liability on its members. *Chadwick Farms*, 166 Wn.2d at 200.

The test to determine the propriety of piercing the corporate veil is also used to determine the propriety of piercing the veil for LLCs. *Id.*; RCW 25.15.061. To pierce the LLC veil, a plaintiff must prove that the form of the LLC "was used to violate or evade a duty and that the [LLC form] must be disregarded in order to prevent loss to an innocent party." *Chadwick Farms*, 166 Wn.2d at 200.

"To pierce the . . . veil and find a parent corporation liable, the party seeking relief must show that there is an overt intention . . . to disregard the . . . entity in order to avoid a duty owed to the party seeking to invoke the doctrine." *Minton*, 146 Wn.2d at 398. This generally requires a showing that the LLC "manipulated the entities in order to avoid the legal duty." *Id.*

14

The corporate veil may be pierced in situations involving "a parent or principal corporation and subsidiary corporations which merely acquiesce in and register the decrees of their principal." *Kueckelhan v. Fed. Old Line Ins. Co.*, 69 Wn.2d 392, 411, 418 P.2d 443 (1966), *superseded on other grounds by State v. WWJ Corp.*, 138 Wn.2d 595, 980 P.2d 1257. " 'If one corporation so dominates and controls another as to make that other merely an adjunct to it, the courts will look beyond the fiction of the distinct corporate entity.' " *Id.* (quoting *Briggs & Co. v. Harper Clay Products Co.*, 150 Wn. 235, 272 P. 962 (1928)).

In an attempt to pierce the LLC veil, summary judgment in favor of the LLC may be appropriate where "the plaintiff fails to show evidence of 'either the requisite manipulation, or the perpetration of a fraud on the plaintiffs.' " *Minton*, 146 Wn.2d at 398 (quoting *Peterick v. State*, 22 Wn. App. 163, 185, 589 P.2d 751 (1980)). The mere fact that there is common ownership of stock or overlap in officers and employees does not, alone, justify a disregard of the separate entities unless there is also evidence of fraud. *Id.* at 399 (determining that even though corporations had a common headquarters and one held itself out as subsidiary of the other, because plaintiff has not asserted that the corporations were attempting to perpetrate a fraud on a third party, there was no genuine issue of material fact on the issue of piercing the corporate veil); *One Pac. Towers Homeowners' Ass'n v. HAL Real Est. Invs., Inc.*, 108 Wn. App. 330, 350, 30 P.3d 504 (2001) (Washington courts "will not imply on overt intent to disregard the corporate form from the presence of common directors, shareholders, or a common business address"), *aff'd in part and rev'd on other grounds by* 148 Wn.2d 319, 61 P.3d 1094 (2002).

B. APPLICATION

SFC argues that the evidence of Capri and RUL's commingling of property rights and interests combined with the fact that RUL is the sole owner of Capri creates a question of fact as to "whether the entities are intended to function as one," and whether allowing them to function as two separate entities would allow the commission of fraud upon third parties. Appellant's Opening Br. at 36. Accordingly, SFC claims that it is entitled to include RUL as a party in this action. We disagree.

SFC claims that it has presented evidence of Capri and RUL commingling property rights as well as co-management and payment of part of the proceeds from the sale of the property from Capri to RUL. SFC also claims that it presented evidence that RUL was insolvent and received $3,000,000 in proceeds from the sale of the property. SFC further claims Capri recently sold the property at the direction of RUL. These actions, according to SFC, represent a "proverbial 'shell game' with RUL (apparently insolvent) siphoning off monies paid to Capri for the sale of lots . . . to the detriment of a creditor, SFC." Reply Br. of Appellant at 19 (footnote omitted).

It is true that SFC presented evidence of RUL's cash difficulties and that RUL received money from the proceeds of the sale of the property. However, SFC's story of a corporate "shell game" involving extensive comingling of assets and misuse of corporate structures is simply not sufficiently supported by its citations to the record. Whereas SFC alleges RUL received $3,000,000 from the sale of the property, the record only shows RUL received substantially less than that. And SFC provides no explanation for the context of this payment or how it, by itself, represents manipulation of the business structures. For SFC allegations that Capri sold the

16

property at the direction of RUL, its citation to the record only establishes that several of the lots on the property could not be developed.

Simply stated, SFC fails to show support in the record that creates a question of fact for its claims of a corporate "shell game." That RUL is the sole owner of Capri and that they had a financial relationship are insufficient to create a question of fact to survive summary judgment. Rather, SFC must present evidence that RUL has so dominated and controlled Capri that Capri is merely RUL's adjunct. SFC has failed to present such evidence, and we will not independently search the record to support SFC's theories. *State v. Brousseau*, 172 Wn.2d 331, 353, 259 P.3d 209 (2011) (court "decline[s] to search for applicable portion of the record in support of [appellant's] argument" where appellant fails to support their statements with citations to the record) (citing *Mills v. Park*, 67 Wn.2d 717, 721, 409 P.2d 646 (1966)). Accordingly, we determine that because SFC has failed to demonstrate a question of fact regarding the piercing of the corporate veil, the superior court did not err in granting Respondents' motion for summary judgment with regard to SFC's claims against RUL.

## V.  ATTORNEY FEES

Both parties make claims regarding attorney fees. SFC requests that we reverse the superior court's award of attorney fees for Respondents. Respondents request attorney fees on appeal. Because we reverse the trial court's entry of summary judgment and remand for further proceedings, we decline to award either party their fees on appeal and leave the question of any future award of attorney fees to the determination of the trial court.

17

CONCLUSION

In conclusion, we hold that because the reinstatement of Newton related back as if it was never stricken from the BVI registry, the agreement tolling the statute of limitations was valid at the time it was entered. We also hold that a six-year statute of limitations applies to the Indeterminate Amount provision. Therefore, the superior court erred in dismissing SFC's claims against Capri on summary judgment on the basis of statute of limitations. However, we determine that because SFC has failed to demonstrate a material issue of fact on whether Capri is the alter ego of RUL, the superior court did not err in dismissing SFC's claims against RUL. Thus, we reverse in part and affirm in part.[4]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Price, J._
PRICE, J.

We concur:

_Glasgow, CJ_
GLASGOW, C.J.

_Cruser, J._
CRUSER, J.

---

[4] Neither party on appeal addresses SFC's motion for summary judgment. At oral argument, SFC confirmed that its motion was limited solely to the issue of non-payment under the promissory note and was not intended to address any of Capri's defenses or counterclaims. Although Capri's non-payment under the promissory note appears uncontested, we decline to address issues the parties fail to brief. *See* RAP 10.3.